# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| Dr. Jeffrey R. Brownson, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| Pennsylvania State University | : | |
| | : | |
| Defendant. | : | |

## THE PARTIES

1.  Plaintiff Jeffrey R. Brownson, Ph.D. ("Dr. Brownson") lives in State College, PA and is a former Associate Professor in the College of Earth and Mineral Sciences at Defendant Pennsylvania State University.

2.  Defendant Pennsylvania State University (hereinafter "Penn State") is a state related institution of higher education located at 201 Old Main, University Park, Pennsylvania 16802.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over the parties and claims pled herein pursuant to 28 U.S.C. § 1331.

4.  This Court has supplemental jurisdiction over related state law claims pled herein pursuant to 28 U.S.C. § 1367(a).

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

## EEOC PROCEEDINGS

6.  Dr. Brownson filed charges of sex and disability discrimination with the Equal Employment Opportunity Commission ("EEOC") docketed September 30, 2020.

7.  The EEOC issued a Right to Sue letter to the Plaintiff dated April 5, 2021, and this lawsuit is brought within ninety (90) days of the receipt of the Right to Sue letter.

## PERTINENT FEDERAL STATUTES AND REGULATIONS
### Title VII

8.  Congress prohibited sex discrimination by employers in Title VII of the Civil Rights Act of 1964:  "(a) Employer practices.  It shall be an unlawful employment practice for an employer —  (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national

origin."  42 U.S.C. § 2000e

## The Americans with Disabilities Act

*Title I*

9.  Congress prohibited discrimination against people with disabilities by

    employers in Title I of the ADA: "No covered entity shall discriminate against a

    qualified individual on the basis of disability in regard to job application

    procedures, the hiring, advancement, or

    discharge of employees, employee compensation, job training, and other terms,

    conditions, and privileges of employment.  42 U.S.C. § 12112."

*Title II*

10. Congress prohibited discrimination against people with disabilities by public

    entities in Title II of the ADA: "[N]o qualified individual with a disability shall,

    by reason of such disability, be excluded from participation in or be denied the

    benefits of the services, programs, or activities of a public entity, or be

    subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. §

    35.130(a).

## The Rehabilitation Act

11. Congress prohibited discrimination against people with disabilities by public

    accommodations, and/or the persons associated with their operation, in the

    Rehabilitation Act: "No otherwise qualified individual with a disability in the

United States, as defined in section 705(20) ["Individual with a Disability"] of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

## BACKGROUND

12. Dr. Brownson is transgender ("trans").

13. Trans is likely due to brain neuroanatomy and the formation of that brain neuroanatomy in the womb.

14. As noted by Dr. Robert Sapolsky, professor of neuroscience at Stanford University and one of the leading scholars of trans science: "[I]t's not the case that transgender individuals think they're a different gender than they actually are. It's more like they got stuck with bodies of a different sex from who they actually are." Sapolsky, R.M., Behave, 216 n. (Penguin 2017.)

15. Dr. Brownson's gender is fundamental and an immutable characteristic.

### Dr. Brownson Has GD

16. Trans people are often treated as outcasts, and are mocked, harassed, abused, and hurt by others which causes distress in trans people and leads to Gender Dysphoria ("GD").

17. GD is a medical and therapeutic diagnosis "associated with clinically

significant distress or impairment in social, occupational, or other important areas of functioning" for the trans person. *Diagnostic and Statistical Manual of Mental Disorders*, 5th Ed. ("DSM-V" at 302.85).

18. Trans people are diagnosed as suffering from GD when they have "clinically significant distress" associated with being trans.

19. GD is a disability in that it substantially impairs one or more major life activities, including, but not limited to, neurological, brain, social, and occupational functions.

20. Dr. Brownson is a trans person who has been diagnosed with GD.

21. Dr. Brownson belongs to the disadvantaged class of trans people with GD.

22. Dr. Brownson is a person with a disability within the definitions of the ADA and the Rehabilitation Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

23. Defendant is aware that trans people with GD, including Dr. Brownson, may be a person with a disability as a result of their GD.

## Defendant Has Discriminated Against Dr. Brownson

24. Defendant has discriminated against Dr. Brownson on the basis of Dr. Brownson's gender and on the basis of Dr. Brownson's disability by, *inter alia*, denying tenure to Dr. Brownson.

25. Similarly situated faculty outside of those protected classes were treated more favorably than Dr. Brownson and granted tenure and promotion.

26. Penn State's justifications for the denial of tenure and promotion are false and a pretext for discrimination.

27. As a result of the discrimination, Dr. Brownson has suffered financial and compensatory damages.

28. Penn State falsely and pretextually destroyed Dr. Brownson's career.

## Dr. Brownson Academic Achievements

29. Dr. Brownson has a Bachelor of Science (B.Sc.) in Geology from the University of North Dakota.

30. Dr. Brownson has a Masters of Science (M.S.) in Geology from the University of Wisconsin—Madison.

31. Dr. Brownson has a Doctorate (Ph.D.) in Environmental Science & Technology from the University of Wisconsin—Madison.

32. Dr. Brownson was a Postdoctoral Research Scientist at CNRS: Institut de Chimie et Matériaux de Paris-Est.

33. Dr. Brownson was a Postdoctoral Research Scientist at the University of Wisconsin.

34. Dr. Brownson joined the Graduate Faculty at Penn State in 2007 as an assistant professor, in the John and Willie Leone Family Department of Energy and

Mineral Engineering.

35. Dr. Brownson became an associate professor in 2013 also in the John and Willie Leone Family Department of Energy and Mineral Engineering.

36. Dr. Brownson was the only member of the Solar engineering faculty at Penn State, and was the Director of the Solar Ecology Program.

37. Dr. Brownson had published 31 papers in refereed journals, 10 as first author, as well as a book, with two more books in progress.

38. Dr. Brownson had advised six doctoral students and ten masters students.

39. Dr. Brownson directed and facilitated the collective works of the Solar Collaborative at Penn State, including students, faculty and staff. The Solar Collaborative pursued laboratory, computational, and field research for solar energy interests, largely aligned with solar photovoltaics as they are currently being deployed in society.

40. Dr. Brownson had pioneered Penn State's 500 acre solar photovoltaic farm, with groundbreaking in September 2019.  Currently under construction, it will be the largest in PA to date. The farm will contribute a $14 million savings in energy costs for Penn State, and will yield decades of educational and research opportunities throughout Penn State. This farm is an outcome of Dr. Brownson's extensive research, their teaching efforts in solar design and stakeholder engagement to over 1000 students, and their service creating

sustainability and solar degree programs while at Penn State University.

### Dr. Brownson is Denied Tenure

41. On March 25, 2020 Dr. Brownson received notice they were being denied tenure as they was purportedly weak in research.

42. The reason for denying Dr. Brownson tenure is entirely pretextual.  Others who began at the same time have done far less yet have been granted tenure.

43. For example, out of eight candidates who began at the same time as Dr. Brownson in 2007, seven were granted tenure.  (The one that wasn't, Dr. Chen, sued Penn State for racial discrimination.)

44. For example, two of the seven, Drs. Forest and LaFemina, had only one first-authored paper in their dossiers. Dr. Forest's research activities, however, were uniformly praised by the college-level reviewers, and Dr. LaFemina's record was explained away in the grant.

45. For example, Dr. Forest, was "noted" for his advising record, yet he completed only two masters students.

46. For example, none of Dr. Blumsack's publications are in journals that would be considered first, second, or perhaps even third tier, according to a reviewer.

47. The Dean himself is responsible for inconsistent and incoherent statements, on the one hand failing to recommend tenure for Dr. Brownson in February 2020, on the other writing to Dr. Brownson on July 30, 2020 that " Frey, I very much

appreciate your leadership in the Solar Collaborative; I know your work will have a lasting impact on Penn State."

48. In fact Penn State's Faculty Tenure Rates report dated March 2021, has no category for any trans people being granted tenure.  Available at https://opair.psu.edu/files/2019/05/Tenure-Flow-2011-2012-and-2013-20210318.pdf

49. Dr. Brownson's contributions to Penn State, in the Dean's words, "will have a lasting impact" on Penn State.

50. Penn State's failure to grant tenure and the reasons given were entirely pretextual. They demonstrate different treatment of Dr. Brownson to the comparators and are inconsistent and incoherent.

51. The denial of tenure meant that Penn State had terminated Dr. Brownson's career at Penn State.

52. Penn State's actions have damaged Dr. Brownson's life and career.

53. Penn State acted with malice and/or reckless indifference, including but not limited to acting with transphobic hatred.

54. Penn State is aware that trans people with GD, including Dr. Brownson, may be a person with a disability as a result of their GD.

55. Dr. Brownson could have been reasonably accommodated but for Penn State's lack of good faith.

## COUNT I– VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## SEX DISCRIMINATION

56. Dr. Brownson restates and realleges all previous paragraphs as though fully set forth here.

57. Dr. Brownson's gender means they are in a protected class.

58. Dr. Brownson was qualified for their position and able to perform the essential functions.

59. Penn State created a hostile environment and terminated Dr. Brownson from their position because of their gender and replaced them by someone who is not trans.

60. Penn State's conduct was severe and/or pervasive, created a hostile or abusive working environment, was unwelcome, and was based on Dr. Brownson's gender.

61. Dr. Brownson suffered adverse employment actions, including but not limited to, being denied promotion and tenure.

62. Circumstances exist giving rise to the inference that Dr. Brownson was denied tenure and promotion because of their sex including, but not limited to, that similarly situated non trans employees with similar or less favorable performance than Dr. Brownson were awarded tenure and promotion.

63. Defendant's justifications for its denial of Dr. Brownson's tenure and

promotion are false and a pretext for discrimination.

## COUNT II – WRONGFUL TERMINATION

64. Dr. Brownson restates and realleges all previous paragraphs as though fully set forth here.

65. Penn State's actions in terminating Dr. Brownson's employment infringed upon their protected rights as set forth herein, including their protected rights under the ADA and Rehabilitation Act.

66. Penn State is liable for wrongful termination of Dr. Brownson.

## COUNT III – VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT (43 P.S. §§ 951-963) SEX DISCRIMINATION

67. Dr. Brownson restates and realleges all previous paragraphs as though fully set forth here.

68. Dr. Brownson's gender means they are in a protected class under the PHRA.

69. Dr. Brownson was qualified for their position and able to perform the essential functions.

70. Penn State created a hostile environment and terminated Dr. Brownson from their position because of their gender and replaced them by someone who is not trans.

71. Penn State's conduct was severe and/or pervasive, created a hostile or abusive working environment, was unwelcome, and was based on Dr. Brownson's gender.

72. Dr. Brownson suffered adverse employment actions, including but not limited to, being denied promotion and tenure.

73. Circumstances exist giving rise to the inference that Dr. Brownson was denied tenure and promotion because of their sex including, but not limited to, that similarly situated non trans employees with similar or less favorable performance than Dr. Brownson were awarded tenure and promotion.

74. Defendant's justifications for its denial of Dr. Brownson's tenure and promotion are false and a pretext for discrimination.

## COUNT IV – VIOLATION OF TITLE I OF THE ADA

75. Dr. Brownson restates and realleges all previous paragraphs as though fully set forth here.

76. Dr. Brownson's has a disability – GD – within the meaning of the ADA.

77. Dr. Brownson is a "qualified individual" able to perform the essential functions of their position.

78. Dr. Brownson's GD was a motivating factor in Penn State's termination.

79. Penn State acted with deliberate indifference to Dr. Brownson's rights under the ADA.

80. As a direct result of the aforesaid unlawful discriminatory practices engaged in by Penn State in violation of the ADA, Dr. Brownson has sustained harm.

81. As a further direct result of the aforesaid unlawful discriminatory practices

engaged in by Penn State in violation of the ADA, Dr. Brownson has suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

82. Dr. Brownson seeks redress for Penn State's violation of their rights under 42 U.S.C. §12133.

## COUNT V – VIOLATION OF TITLE II OF THE ADA

83. Dr. Brownson restates and realleges all previous paragraphs as though fully set forth here.

84. Dr. Brownson has a disability – GD – within the meaning of the ADA.

85. Penn State is a public entity within the meaning of the ADA.

86. Penn State's treatment of Dr. Brownson violates the ADA by discriminating against Dr. Brownson on the basis of their disability.

87. Penn State acted with deliberate indifference to Dr. Brownson's rights under the ADA.

88. As a direct result of the aforesaid unlawful discriminatory practices engaged in by Penn State in violation of the ADA, Dr. Brownson has sustained harm.

## COUNT VI – VIOLATION OF THE REHABILITATION ACT

89. Dr. Brownson restates and realleges all previous paragraphs as though fully set forth here.

90. Dr. Brownson is a qualified person with a disability within the meaning of the Rehabilitation Act.

91. Penn State accepts federal financial assistance and has done so at all times relevant to this Complaint and has "program[s] . . . receiving Federal financial assistance" for the purposes of the Rehabilitation Act.

92. Penn State has violated the Rehabilitation Act by discriminating against Dr. Brownson solely on the basis of their disability.

93. Penn State's termination of Dr. Brownson violates the Rehabilitation Act and is done with deliberate indifference.

94. As a direct result of Penn State's unlawful and discriminatory practices in violation of the Rehabilitation Act, Dr. Brownson has sustained harm.

95. As a direct result of Penn State's unlawful and discriminatory practices in violation of the Rehabilitation Act, Dr. Brownson has suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

96. Dr. Brownson seeks redress for Defendants' violation of their rights under 29 U.S.C. §794(a).

**COUNT VII – VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT (43 P.S. §§ 951-963) DISABILITY DISCRIMINATION**

97. Dr. Brownson restates and realleges all previous paragraphs as though fully set forth here.

98. Dr. Brownson is a protected person with a disability within the meaning of the PHRA.

99. Penn State has violated the PHRA by discriminating against Dr. Brownson

solely on the basis of their disability.

100.   Dr. Brownson is a "qualified individual" able to perform the essential

functions of their position.

101.   Dr. Brownson's GD was a motivating factor in Penn State's termination.

102.   Penn State acted with deliberate indifference to Dr. Brownson's rights.

103.   As a direct result of the aforesaid unlawful discriminatory practices engaged

in by Penn State, Dr. Brownson has sustained harm.

104.   As a further direct result of the aforesaid unlawful discriminatory practices

engaged in by Penn State, Dr. Brownson has suffered severe emotional distress,

embarrassment, humiliation, and loss of self-esteem.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Dr. Brownson respectfully requests that this Court:

A. Award Dr. Brownson compensatory and punitive damages, attorneys' fees, costs, and disbursements.

B. Award Dr. Brownson such other and further relief as the Court may deem just and proper.

A trial by jury is demanded on all counts.

Respectfully Submitted,

Date: July 5, 2021

<u>/s/ Julie Chovanes</u>
Julie Chovanes, Esq.
Chovanes Law
P.O. Box 4307
Philadelphia, PA 19118
267-235-4570
jchovanes@chovanes.com

Counsel for Plaintiff